IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

CENTENNIAL BANK, successor
in interest to COASTAL COMMUNITY BANK,

    Plaintiff,

vs.                          CASE NO. 5:11-cv-20/RS-CJK

EDTC & B, LLC;
EDDIE RAY EANES;
DAN GILL;
TIM RAMSEY
CHRIS MONTGOMERY;
CHARLES BUTLER;
DAVID F. PANETTI;
STATE OF FLORIDA, DEPARTMENT OF REVENUE;
CRAZY MARLINS OF PANAMA CITY BEACH, LLC
D/B/A BUCKALOOS,

    Defendants.
_____

**FINAL JUDGMENT OF FORECLOSURE UNDER COUNT I AND PARTIAL FINAL JUDGMENT OF LIABILITY UNDER COUNT II AND III OF PLAINTIFF'S AMENDED COMPLAINT**

Before me are Plaintiff's Motion for Summary Final Judgment in Foreclosure Under Count I and Partial Final Judgment of Liability Under Counts II and III of Plaintiff's Amended Complaint (Doc. 80), and my Order granting that motion (Doc. 85).

**IT IS ORDERED:**

1. The Court has jurisdiction over the parties and the subject matter.

2. There are no genuine issues of fact as to Plaintiff's Amended Complaint.

3. Defendants, EDTC & B, LLC, Eddie Ray Eanes, Dan Gill, Tim Ramsey, Chris Montgomery, Charles Butler, David F. Panetti, State of Florida, Department of Revenue, Crazy Marlins of Panama City Beach LLC d/b/a Buckaloos, failed to sufficiently raise any defense preventing the relief requested by Plaintiff and did not oppose Plaintiff's Motion for Summary Judgment.

4. Defendants, EDTC & B, LLC, Eddie Ray Eanes, Dan Gill, Tim Ramsey, Chris Montgomery, and Charles Butler, jointly and severally, owe Plaintiff, Centennial Bank, $2,075,891.59 as principal, $122,508.72 as interest through November 9, 2011, $10,789.17 as late charges, plus $32,563.00 for insurance, making a total sum of $2,241,752.48, which amount shall bear interest at the post-judgment interest rate defined by 28 U.S.C. §1961, from the date of this judgment until paid.

5. Plaintiff holds a lien for the total sum in Paragraph 4 herein superior to all claims or estates of Defendants on the following described real and personal property located in Bay County, Florida.

> Parcel I:
> Lots 1 and 24, Block I of HOLIDAY BEACH UNIT THREE,

according to the Plat thereof as recorded in Plat Book 10, Page(s) 58, of the Public Records of Bay County, Florida.

Parcel II:
Lots 2, 3 and 23, Block I of HOLIDAY BEACH UNIT THREE, according to the Plat thereof as recorded in Plat Book 10, Page(s) 58, of the Public Records of Bay County, Florida.

Parcel III:
Lot 4, Block I of HOLIDAY BEACH UNIT THREE, according to the Plat thereof as recorded in Plat Book 10, Page(s) 58, of the Public Records of Bay County, Florida.

Parcel IV:
Commencing at the point of intersection of the Northwesterly line of Lot 21, Block I of HOLIDAY BEACH UNIT THREE, according to the Plat thereof as recorded in Plat Book 10, Page(s) 58, of the Public Records of Bay County, Florida and the Southwesterly R/W line of Beach Drive; thence along said R/W line on a curve to the right having a radius of 23,203.30 feet and a chord bearing S48°44'35"E for a chord distance of 25.51 feet to the Point of Beginning; thence continue along said R/W line on a curve to the right having a radius of 23,203.30 feet and a chord bearing S48°40'51"E for a chord distance of 25 feet to the point of intersection of said R/W line and the Southwesterly line of said Lot 21; thence S41°21"00"W along said Lot line 115 feet; thence along the Southwesterly line of said Lot 21 on a curve to the left having a radius of 23,088.30 feet and a chord bearing N48°40'53"W for a chord distance of 25 feet; thence N01°21'00"E, 115 feet to the Point of Beginning.

AND

Beginning at the point of intersection of the Northwesterly line of Lot 21, Block I of HOLIDAY BEACH UNIT THREE, according to the Plat thereof as recorded in Plat Book 10, Page(s) 58, of the Public Records of Bay County, Florida and the Southwesterly R/W line of Beach Drive; thence along said

R/W line on a curve to the right having a radius of 23,203.30 feet and a chord bearing S48°44'35"E for a chord distance of 25.51 feet; thence S41°21'00"W, 115.00 feet to a point on the Southwesterly line of said Lot 21; thence along said Lot line on a curve to the left having a radius of 23,088.30 feet and a chord bearing N48°44'36"W for a chord distance of 25.26 feet; thence N41°13'31"E along the Northwesterly line of said Lot 21, 115.00 feet to the Point of Beginning.

Personal Property

All development rights, air rights, water and water rights, and all estates, rights, titles, interest, privileges, tenements, hereditaments and appurtenances belonging or relating to any of said lands, and all reversions, remainders, rents, issues, profits and all rights, whether arising in law or equity; all present and future structures, building, and improvements including al apparatus, equipment and appliances used in connection with the land and improvement, such as heating and AC, sewage disposal, refrigeration, utility and other systems and facilities on the lands; all easement and license rights relating or appurtenant to, or used with respect to the lands; all rents, profits, proceeds an d income from the lands, including all rights under past, present or future leases or rental agreements, including deposits; all proceeds and claims from any of the collateral acting as security; all general intangibles relating to the development, construction one, sale or sue of the lands, including, but not limited to, all contract rights and all governmental permits or legal or equitable rights to permit, for activities on or use of the lands, all rights to carry on business under the names currently in use or in use in the future, all crop allotments and quotas and entitlements of any kind, and all trademarks and goodwill in any way relating to the lands, and al proceeds of any lease or contract for sale or use; all machinery, furniture, fittings, apparatus, equipment and other personal property located upon or under the lands and used in connection with the past, present or future operation of any business on the lands; all material and supplies used or to be used on construction of any improvements on the lands; all standing or harvested timber and all crops on the land; and all trade, domestic or ornamental fixtures, appurtenances, or personal property, including all draperies, carpeting, wall covering, light fixtures and ceiling

fans; ALL of which shall constitute the mortgaged property serving as security and collateral.

6. If the total sum with interest at the rate prescribed by law due under Paragraph 4 and all costs of this action accruing subsequent to this judgment are not paid prior to the commencement of the sale by the United States Marshal (the "Marshal"), the Marshal is ordered and directed to sell the property at public sale.

7. Pursuant to Fed. R. Civ. P. 69, the procedures for sale shall be in accordance with the practice and procedure in the State of Florida as provided in Chapter 45, Florida Statutes (2010) except that title shall vest in the purchaser pursuant to a United States Marshal's Deed issued after confirmation of any sale by this Court.

8. The Marshal shall advertise the sale of the subject property in accordance with 28 U.S.C. §§ 2001-2002, and after giving proper notice, conduct the sale of the property at the Bay County Courthouse at Panama City, Florida.

9. Plaintiff is authorized to bid at the sale and any bid by the Plaintiff shall be credited against the indebtedness due the Plaintiff under Paragraph 4 herein.  Plaintiff shall advance all subsequent costs of this action and shall be reimbursed for them by the Marshal if Plaintiff is not the purchaser of the property at the sale in accordance with the Order Confirming Sale.  If Plaintiff is the purchaser at the sale, the Marshal shall credit Plaintiff's bid with the total sum in Paragraph 4, with interest and costs accruing subsequent to this judgment or such

part of it as is necessary to pay the bid in full.  If a third party is the purchaser at the sale, 10% of the bid price by certified check or cashier's check shall be paid at the time of the sale with the balance to be paid by certified check or cashier's check to the Marshal within 24 hours after the sale.

10. Upon sale being made, then the Marshal is directed to make a report and accounting of the proceeds realized from the sale, if any, and the bidder, or bidders, at such sale and report the amount of the sale for confirmation.  The Marshal shall file the report of sale with the Court no later than fifteen (15) days after the sale.  Upon the sale being made, the Marshal shall retain the proceeds thereof until the Order Confirming Sale is entered by the Court.

11. Upon the sale being made of the property and confirmed by this Court, the Court shall direct the Marshal to execute a United States Marshal's Deed to the property.  At said time, the Defendants and all persons claiming under or against them since the filing of the Notice of Lis Pendens are foreclosed of all estate or claim in the property and the purchaser at the sale shall be let into possession of the property.  As set forth herein, the Defendants' right of redemption expires at the time of the judicial sale ordered in this judgment, with the exception of the right of redemption for Defendant, United States of America, Internal Revenue Service, which shall have one hundred twenty days (120 days)

from the date of sale to redeem the property under the provisions of 28 U.S.C. §2410.

12. The Marshal shall distribute the proceeds of the sale in accordance with the Order Confirming Sale.

13. On the order confirming sale, the Marshall will execute and deliver the United States Marshal's Deed to the purchaser at the sale. Plaintiff shall prepare the United State's Marshall's Deed. The purchaser at the sale shall pay for and be responsible for affixing to the United States Marshal's Deed any documentary stamps or taxes imposed upon the recordation of the deed.

14. <u>If the subject property is sold at public auction, there may be additional money from the sale after payment of persons who are entitled to be paid from the sale proceeds pursuant to the final judgment of foreclosure. If you are a subordinate lienholder claiming a right to funds remaining after the sale, you must file a claim with the United States Marshal no later than 60 days after the sale. If you fail to file a claim, you will not be entitled to any remaining funds. If you are the property owner, you may claim these funds yourself. You are not required to have a lawyer or any other representation and you do not have to assign your rights to anyone else in order for you to claim any money to which you are entitled. Please check with the United States Marshal within ten (10) days after the sale to see if there is additional money from the foreclosure sale.</u>

15. Defendant, EDTC & B, LLC, is liable for the amounts owed to Plaintiff specified in Paragraph 4 and the Court reserves jurisdiction herein to determine the amount of said damages following the foreclosure sale upon proper motion by Plaintiff for a deficiency judgment against EDTC & B, LLC under Count II of the Amended Complaint.

16. Defendants, Eddie Ray Eanes, Dan Gill, Tim Ramsey, Chris Montgomery, and Charles Butler, are liable for the amounts owed to Plaintiff specified in Paragraph 4 and the Court reserves jurisdiction herein to determine the amount of said damages following the foreclosure sale upon proper motion by Plaintiff for a deficiency judgment against defendants under Count III of the Amended Complaint respectively.

17. Plaintiff shall be entitled to recover its reasonable attorneys' fees and costs pursuant to the loan documents attached to the Amended Complaint.  This Court retains jurisdiction over this matter for the purposes of determining the amount of attorneys' fees and costs to be awarded, entry of a deficiency judgment, if appropriate, and handling any motions related to the enforcement or collection of any such deficiency judgment.

**ORDERED** on November 14, 2011.

/S/ Richard Smoak
**RICHARD SMOAK**
**UNITED STATES DISTRICT JUDGE**